Signed and Filed: November 8, 2012

_____
**THOMAS E. CARLSON**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>WILLIAM JAMES DEL BIAGGIO, III,<br>aka "BOOTS" DEL BIAGGIO,<br><br>            Debtor.<br>_____<br>LIQUIDATING TRUST COMMITTEE OF<br>THE DEL BIAGGIO LIQUIDATING<br>TRUST,<br><br>            Plaintiff,<br><br>     vs.<br><br>DAVID FREEMAN,<br><br>            Defendant.<br>_____ | Case No. 08-30991 TEC<br><br>Chapter 11<br><br><br><br><br><br>Adv. Proc. No. 12-3065 TEC |

**MEMORANDUM DECISION RE SUBORDINATION OF FREEMAN CLAIM**

David Freeman (Freeman) asserts a general unsecured claim in the amount of $38,632,075.  The Official Creditors Committee (the Committee) contends in this action that Freeman's claim should be subordinated under section 510(b) of the Bankruptcy Code.  The Committee now moves for summary judgment.  I determine that Freeman's claim must be subordinated, and that it is not necessary to determine whether the claim should be allowed because the estate

MEMORANDUM DECISION RE
SUBORDINATION OF FREEMAN CLAIM
-1-

has insufficient assets to make any payment to subordinated claims.

**FACTS**

There is no dispute regarding any fact material to whether Freeman's claim should be subordinated under section 510(b).

In December 2007, Freeman invested $36 million in Predators Holdings, LLC (Predators). Predators owns the National Hockey League franchise in Nashville, Tennessee. Freeman spent $31 million to purchase 31 common units in Predators. At the same time, he made a $5 million subordinated loan to Predators. In February 2009, Freeman invested an additional $2,632,075 in Predators in response to a capital call.

Debtor William "Boots" Del Biaggio (Del Biaggio) also invested in Predators in December 2007. He paid $25 million to acquire an 83 percent interest in Forecheck Investments, LLC (Forecheck). Forecheck paid $30 million to acquire 30 Series A units in Predators. As part of the purchase, Del Biaggio promised to advance additional sums necessary to fund the signing of new players, guaranteed $10 million of the team's lease obligation, guaranteed $40 million of the team's debt to CIT Bank, and promised to pay interest on the bank debt.

The Series A units acquired by Forecheck (and indirectly Del Biaggio) have voting rights and represent 34 percent of the voting interests in Predators. In other respects, the Series A units have rights different from the common units acquired by Freeman: the Series A units are not subject to capital calls, and they are entitled to a liquidation preference over the common units. See Amended Operating Agreement of Predators Holding, LLC (Predators Operating Agreement), Article 12.2.

In early 2008, it became known that Del Biaggio had embezzled the $25 million he had invested in Predators. On June 6, 2008, he filed a chapter 11 petition in this court. He was later convicted in Federal District Court and sentenced to an 8-year prison term for the financial frauds he had committed.

In the months following the revelation of Del Biaggio's fraud, the Nashville hockey team suffered bad press and incurred substantial losses. Del Biaggio's bankruptcy and indictment constituted defaults under the guarantees he had made, and as a result, CIT Bank threatened to call its loan, and the team's landlord threatened to cancel its lease. Predators issued capital calls to its common members to raise necessary funds. Freeman responded to the first capital call, contributing $2,632,075 in February 2009. Freeman was unable to respond to subsequent capital calls. As a consequence, his membership interest became "heavily diluted and virtually worthless." He alleges that the $5 million subordinated note also became worthless following the disclosure of Del Biaggio's falsehoods.

In his proof of claim, Freeman asserts that Del Biaggio induced him to invest in Predators by concealing his frauds and misrepresenting his true financial condition. Specifically, he alleges that Del Biaggio failed to disclose that he had embezzled the $25 million he invested in Predators, that he did not have sufficient funds to fund player salaries as he had promised to do, and that he was not the upright businessman he represented himself to be. Freeman asserts that he would not have invested in Predators had Del Biaggio not made those misrepresentations, and that Freeman therefore has a direct, personal fraud-in-the-

inducement claim against Del Biaggio for his entire $38 million investment in Predators.

The Committee contends that Freeman's claim must be subordinated to the claims of Del Biaggio's other creditors under section 510(b) of the Bankruptcy Code, because the claim is for damages arising from the purchase or sale of a security of an affiliate of the debtor. It is undisputed that the estate has sufficient funds to pay only a fraction of allowed general unsecured claims, and that Freeman would not receive any distribution if his claim is subordinated.

**DISCUSSION**

A.  Statutory Framework and Purpose

Section 510(b)[1] provides:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor ***or of an affiliate of the debtor***, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, ***shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security***, except that if such security is common stock, such claim has the same priority as common stock.

(emphasis added).

Section 101(2) provides that a corporation is an "affiliate" of the debtor if it is controlled by the debtor.

> The term "affiliate" means–
> . . .
> (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, ...

---

[1] All statutory references are to the United States Bankruptcy Code, Title 11 of the United States Code.

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-4-

Section 101(9)(A)(ii) defines "corporation" to include: "partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association." Case law holds that a limited liability company is a "corporation" under that test. 2 Collier on Bankruptcy ¶ 101.09 (16th ed. 2011).

The central purpose of section 510(b) is to protect the absolute priority rule, which requires that creditors of a debtor be paid in full before equity holders receive any distribution. The absolute priority rule comes under stress when an equity holder sues the debtor for damages related to the purchase or sale of the debtor's shares, because the equity holder is essentially seeking to convert himself from an equity holder into a creditor. Section 510(b) bars this conversion. Section 510(b) recognizes the prayer for damages as a claim, but affords that claim only those rights to the assets of the debtor that the underlying security had under the absolute priority rule.

The purpose of the absolute priority rule itself is to enforce the different expectations of creditors and equity investors.

> According to Professors Slain and Kripke, both investors and creditors accept the risk of enterprise insolvency but to a different degree. This stems from their dissimilar expectations. Even if the business prospers, the creditor anticipates no more than the repayment of his fixed debt. Further, the shareholder's investment provides an equity cushion for the repayment of the claim. The investors, on the other hand, share the profits to the exclusion of the creditors. The shareholder's enhanced risk of insolvency represents the flipside of his unique right to participate in the profits. The allocation of the risk, as between the investor and the creditor, is reflected in the absolute priority rule, and should not be reallocated.

In re Granite Partners, L.P., 208 B.R. 332, 336 (Bankr. S.D.N.Y. 1997) (citations omitted).

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-5-

Case: 12-03065   Doc# 49   Filed: 11/08/12   Entered: 11/09/12 07:42:26   Page 5 of 14

> When the corporation is solvent, the relative priorities between creditors and shareholders are without significance. But "[w]hen a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion."

Id. at 337 (citations omitted).

In enacting section 510(b), Congress expressly relied upon the Slain-Kripke investor-risk-and-reward analysis. H. Rep. 95-595 at 194-96, U.S. Code Cong. & Admin. News 1978, at 6154-57.

Although the most obvious situation in which the absolute priority rule requires the subordination of a claim is where the claim arises from an investment in common stock of the debtor itself, the language of section 510(b) extends the reach of the statute beyond that prototype fact pattern. First, the claim against the debtor is subordinated when it relates to either a security of the debtor ***or the security of an affiliate of the debtor***. In re VF Brands, Inc., 275 B.R. 725, 728 (Bankr. Del. 2002). Second, section 510(a) applies to claims arising from the purchase or sale of any security of the debtor or its affiliate, not just claims related to equity securities. For this purpose, a security includes a promissory note of the debtor or its affiliate. Section 101(49)(A)(i).

B. The Committee's Argument

The Committee argues that under section 510(b) Freeman's claim must be subordinated to general unsecured claims against the Del Biaggio bankruptcy estate for the following reasons: (1) Freeman's claim is one for damages arising from the purchase or sale of a security of Predators; (2) Predators is an affiliate of the debtor, because Del Biaggio indirectly controlled 34 percent of the voting

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-6-

power of Predators; and (3) as against the Del Biaggio bankruptcy estate, the claims of Del Biaggio's creditors are senior in priority to the claim represented by common units of Predators, because equity holders of a subsidiary have no claim against the assets of the parent of the subsidiary.

C. Freeman's Argument

Freeman does not contest that his claim for recovery of his $38 million investment in Predators is a claim for damages arising from the purchase of a security of an affiliate of the debtor within the meaning of section 510(b). Freeman, however, advances several arguments why part or all of his claim should not be subordinated to the claims of Del Biaggio's other creditors.

Freeman first argues that subordination of his claim does not further the statutory purpose behind section 510(b). He states:

> Essentially, the purpose of mandatory subordination within Section 510(b) was to recognize that when creditors extend credit to companies, they rely upon the equity cushion provided by shareholders, and therefore, when that company becomes insolvent, those creditors should have first priority to that equity cushion, and shareholders should participate only if creditors have thus been paid in full. That is the essence of the absolute priority rule, and the intent of Section 510(b).
> In this case, that purpose would not be served by subordinating the Amended Claim to other claims against the Debtor. Creditors of the Debtor did not extend credit to the Debtor based on any equity cushion provided by Mr. Freeman, because Mr. Freeman did not invest in the Debtor but rather in [Predators]. ... At the same time, Mr. Freeman did not invest alongside of the Debtor with any expectation of an "upside" from the Debtor – Mr. Freeman simply looked to the Debtor to satisfy his obligations, as did the Debtor's other creditors.

Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 19-20.

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-7-

Freeman next argues that the language of section 510(b) has no effect on his claim, because under section 510(b) the priority of his claim would be derived from the priority of an equity interest in Predators, and an equity security in Predators is not within the priority chain of claims against Del Biaggio.

> Under the specific language of Section 510(b), a claim within its scope must be subordinated to "all claims or interests that are senior to or equal the claim or interest represented by such security [meaning, the security whose purchase or sale is the subject of the challenged claim]." In other words, as pertains here, if Section 510(b) is applicable at all, it would only cause the Amended Claim to be subordinated to claims senior or equal to a membership interest in [Predators].
> The only claims that are senior or equal to a membership interest in [Predators] are claims against [Predators]. Claims against the Debtor, on the other hand, are junior to membership interests in [Predators], or are simply not in the same priority scheme or "food chain" as interests in [Predators] ...
> Thus, the only claims to which the Amended Claim could be subordinated under Section 510(b) would be claims against [Predators]. But claims against [Predators] are not claims in the Debtor's bankruptcy case, and therefore, there are no "senior or equal" claims to which the Amended Claim must be subordinated under Section 510(b) of the Bankruptcy Code.

Id. at 20-21.

Freeman's third argument is that his claim may not be subordinated, because the plan does not provide any separate treatment for subordinated claims.

Freeman's final argument is that his claim for recovery of his $5 million loan to Predators should not be subordinated under section 510(b), because it arises from a debt instrument rather than an equity interest.

D. Analysis of the Parties' Arguments

For the reasons stated below, I determine that section 510(b) requires Freeman's entire claim to be subordinated to general

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-8-

unsecured claims against the Del Biaggio estate.

1. Application of Section 510(b) to Securities of an Affiliate

Freeman's principal argument is that section 510(b) does not require his claim to be subordinated, because he did not invest in Del Biaggio but in a separate company that has not filed bankruptcy. This argument fails for the reasons stated below.

The plain language of section 510(b) applies to claims arising from securities issued by an affiliate of the debtor. It is not disputed that Predators is an affiliate of the debtor. The statute does not require that the affiliate also be a debtor. The plain language of section 510(b) requires Freeman's claim to be subordinated to all claims against the Del Biaggio estate having a priority senior to that of the promissory note and the common membership interest issued by Predators. As against the Del Biaggio estate, the claims of creditors of Del Biaggio are senior to the claims of parties holding promissory notes or equity interests issued by Predators. This is so, because holding notes or shares issued by a subsidiary creates no claim to the assets of a parent company. VF Brands, 275 B.R. at 727.

This court must apply the plain language of section 510(b), even if that language goes beyond the stated policy rationale for the statute. RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 132 S.Ct. 2065, 2073 (2012); In re USA Commercial Mortg. Co., 377 B.R. 608, 619-20 (9th Cir. BAP 2007).

Case law does not limit the application of section 510(b) to claims asserted against the entity that issued the security. Courts have held expressly that a damage claim asserted against a ***debtor*** concerning a security of an ***affiliate*** of the debtor must be

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-9-

subordinated to creditor's claims against the *debtor*.

> [Claimant] argues, however, that it should not be treated on a par with the [debtors'] shareholders, because it never bought stock in the [debtors], but instead bought the stock of a separate subsidiary. However, we do not find this significant. The language of section 510(b) applies equally to claims arising from purchase of the stock of an affiliate, including a subsidiary, of the debtor as it does to the purchase of stock of the debtor itself.

<u>VF Brands</u>, 275 B.R. at 727. <u>Accord</u> <u>In re Lernout & Hauspie Speech Prod., N.V.</u>, 264 B.R. 336, 341-43 (Bankr. Del. 2001). <u>In re THC Fin. Corp.</u>, 679 F.2d 784, 786 (9th Cir. 1982) (reaching same result under pre-1978 bankruptcy law).

Finally, I conclude the statutory purpose of section 510(b) is in fact furthered by the subordination of claims arising from a security issued by a subsidiary controlled by the debtor. Pre-Code case law held that a claim arising from a security of a subsidiary controlled by the debtor was equivalent to a claim concerning a security of the debtor in terms of the risks and rewards expected by the investor.

> Appellants concede that if their claim were against [debtor] for fraud in the issuance of stock, it would be subordinate to the claims of [debtor's] general creditors under U. S. Financial. They seek to distinguish themselves from the U. S. Financial stockholder by characterizing their claim as one against the [debtor's] subsidiary for an independent tort. We conclude that the policy considerations that led us to subordinate the stockholder's claim in U. S. Financial apply with equal force.
>
> Like the stockholder in U. S. Financial, appellants bargained for equity-type profits and equity-type risks when they purchased their stock. One such risk was [debtor's] fraud. **Another was the risk that, in carrying out its fraudulent scheme, [debtor] might use a wholly-owned subsidiary to effectuate its plans**. A wholly-owned subsidiary is, with allowances for corporate formalities, completely controlled by its parent. While the stockholder does not necessarily assume the risk that an independent third-party might join the fraud, the third

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-10-

> party here is a member of the corporate family, a wholly-owned subsidiary of the issuer. ***We fail to see why the relative equitable position of a defrauded stockholder should be enhanced simply because the issuer elects to carry out its fraudulent scheme via the common corporate practice of doing business through a wholly-owned subsidiary***.

THC Fin. Corp., 679 F.2d at 786 (citations omitted) (emphasis added).

Case law interpreting section 510(b) also concludes that proper consideration of the risks and benefits anticipated by creditors and equity investors, the policy rationale of section 510(b), requires that claims arising from a security issued by an affiliate subsidiary must be subordinated to claims against the debtor.

> [Claimant] invested in equity in [debtor's subsidiary] with the expectation that it would reap the profits. Consequently, it must be willing to accept the consequences of its status as a shareholder: the possibility that it would lose its investment. To hold, as [claimant] asserts, that it retains an unsubordinated general unsecured claim against [debtor] for damages arising from its investment in [debtor's subsidiary] would give it the best of both worlds--the right to share in profits if [debtor's subsidiary] succeeded and the right to repayment as a creditor [from debtor] if it failed. It was exactly this scenario that Congress sought to avoid by subordinating such claims through section 510(b).

VF Brands, 275 B.R. at 728.

Equity holders of a solvent subsidiary do, of course, have a claim against the assets of that subsidiary after the creditors of the subsidiary have been paid. Predators is apparently solvent, and much of the value of the Del Biaggio estate consists of proceeds from the sale of its equity interest in Predators. One could argue that even if Freeman's claim is subordinated to the level of an equity interest in Predators, that claim would entitle

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-11-

Freemen to share the equity of Predators *pari passu* with other equity holders of Predators, including the Del Biaggio estate.

Freeman does not make this argument, and he would not likely prevail if he did. The Del Biaggio estate received funds in respect of its Series A interest in Predators, an interest **senior** to the common membership interest to which the bulk of Freeman's claim relates. Article 12.2 of the Predators Operating Agreement provides that Del Biaggio's Series A interest is entitled to a liquidation preference over the interests of Common Members. Finally, I also note that Predators is not a debtor, and this court is not charged with ensuring that Predators' assets have been distributed properly among its creditors and equity holders.

2. Subordination is Not Precluded by the Confirmed Plan

Freeman argues that his claim cannot be subordinated because the confirmed chapter 11 plan provides for pro rata distribution to all allowed general unsecured claims, whether or not those claims are subordinated, and that it is therefore law of the case that his claim not be subordinated.

This argument is wholly unpersuasive. First, the plan expressly reserves all of the estate's causes of action, defenses and objections, and rights of subordination. See §§ 5.7 and 1.17 of confirmed plan. Second, the plan nowhere suggests that the right to seek subordination of any claim under 510(b) is compromised or waived. Third, Federal Rule of Bankruptcy Procedure 7001(8) states that the subordination of claims can be accomplished either via a plan, or via an adversary proceeding such as the one the Committee has filed here. Finally, Freeman has cited no authority holding that an adversary proceeding to subordinate a

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-12-

claim under section 510(b) was barred because the confirmed plan did not provide a separate class for subordinated claims.

3. Treatment of the Promissory Note

Freeman asserts that to the extent his damage claim relates to the $5 million promissory note from Predators (the Note), the claim is not subordinated under section 510(b), because the claim relates to an interest senior to all equity interests in Predators. This argument is also unpersuasive.

Section 510(b) subordinates all damage claims arising from the purchase or sale of a "security" of the debtor or an affiliate of the debtor. Under section 101(49)(A)(i), the term "security" includes a promissory note. Because the Note was issued to Freeman as part of the transaction in which he purchased an equity interest in an affiliate of the Debtor, any claim against the Debtor arising from the issuance of the Note is subordinated under section 510(b). In re Betacom of Phoenix, Inc., 240 F.3d 823, 832 (9th Cir. 2001) (dictum).

Once subject to subordination under section 510(b), Freeman's claim cannot have a priority greater than that of the security involved (the Note). The relevant question then is whether the Note itself has rights against the Del Biaggio estate senior to the rights of Del Biaggio's creditors. It does not. Neither equity shares nor promissory notes issued by a subsidiary represent any claim to the assets of the parent (Del Biaggio). See VF Brands, 275 B.R. at 727. To the extent section 510(b) treats the claim arising from the Note as a claim against the assets of the parent (Del Biaggio), the claim would still be subordinated to other general unsecured claims against Del Biaggio. This is so, because

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

under section 510(b) any claim arising from a security other than common stock is subordinated to other claims otherwise entitled to equal priority. It is only claims arising from common stock that are treated *pari passu* with holders of rights of equal priority.

> [A] claim ... shall be subordinated to all claims or interests **that** are senior to or **equal the claim or interest represented by such security**, except that if such security is common stock, such claim has the same priority as common stock.

Section 510(b) (emphasis added).

**CONCLUSION**

There is no dispute regarding any material fact. Freeman's claim arises from the purchase of securities of an affiliate of Debtor. Under section 510(b), the claim possesses no greater rights against Debtor's estate than do the securities Freeman purchased. The securities purchased possess rights against the estate junior to the claims of Debtor's other creditors, because securities issued by a subsidiary create no rights against the assets of the parent. The Committee's motion for summary judgment is granted. Freeman's claim is subordinated under section 510(b) to the claims of general unsecured creditors of the Del Biaggio estate, and to all claims senior to those general unsecured claims.

**\*\*END OF MEMORANDUM DECISION\*\***

**MEMORANDUM DECISION RE**
**SUBORDINATION OF FREEMAN CLAIM**

-14-

Case: 12-03065    Doc# 49    Filed: 11/08/12    Entered: 11/09/12 07:42:26    Page 14 of 14